UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | CV 20-03334 PA (RAOx) | Date | August 6, 2020 |
|---|---|---|---|
| Title | Young Hollywood LLC v. White Ops, Inc. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| T. Jackson | Not Reported | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**  IN CHAMBERS - COURT ORDER

Before the Court is a Motion to Dismiss Certain Claims in First Amended Complaint filed by defendant White Ops, Inc. ("Defendant"). (Dkt. No. 50 ("Mot.").) Plaintiff Young Hollywood LLC ("Plaintiff") filed an Opposition (Dkt. No. 51 ("Opp.")) and Defendant filed a Reply (Dkt. No. 52). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument. The hearing calendared for August 10, 2020 at 1:30 p.m., is vacated, and the matter taken off calendar.

**I.   Background**

As alleged in Plaintiff's First Amended Complaint ("FAC"), Plaintiff is a "publisher and distributor of exclusive, premium celebrity and lifestyle content." (FAC ¶ 13.) Plaintiff "operates several digital platforms, including two . . . websites." (Id. ¶ 14.)

According to the FAC, Plaintiff's "revenue is derived exclusively from advertising and licensing its content." (Id. ¶ 18.) In 2008, Plaintiff "signed an exclusive agreement with Telaria, Inc., a supply-side platform that monetizes and manages premium video advertising inventory." (Id. ¶ 20.) "Telaria sells [Plaintiff's] digital media advertising in exchange for a gross percentage of the sales." (Id.) Beginning in March of 2015, Plaintiff "also began to work with Prodege, a consumer engagement and online marketing company, to market [Plaintiff's] content and drive traffic to [Plaintiff's] [w]ebsites." (Id. ¶ 23.) Prodege is an online marketing company that uses "incentivized" or "rewarded" traffic in exchange for viewing ads in order to drive traffic to a client's website. (Id. ¶¶ 23-26.)

As stated in Plaintiff's FAC, Defendant is a "cybersecurity company that claims to provide fraud detection services." (Id. ¶ 29.) Defendant "uses proprietary software and algorithms to detect bots and fraudulent traffic." (Id. ¶ 29.) One of the services Defendant offers is "MediaGuard pre-bid prevention," which is a "'pre-bid filter' intended to prevent fraud before [a] publisher's [like Plaintiff's] advertising inventory is offered to advertisers for bidding." (Id. ¶ 32.) The pre-bid filter "evaluates every request for a bid and blocks fraudulent website traffic - known as invalid traffic or IVT - from being seen or offered to advertisers." (Id.) Defendant then publishes a "'taxonomy' list that categorizes [what Defendant] considers to be IVT." (Id. ¶ 33.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-03334 PA (RAOx) | Date | August 6, 2020 |
|---|---|---|---|
| Title | Young Hollywood LLC v. White Ops, Inc. | | |

Plaintiff alleges Defendant "maintains a 'blacklist' of domains associated with fraud" and "distributes information regarding these blacklisted domains to its clients." (Id. ¶ 35.) Defendant's customers also allegedly have "access to a customer dashboard, where they are able to view the results of [Defendant's] filtering and are able to customize the viewing by date, time, etc." (Id. ¶ 36.)

As alleged in the FAC, "[i]n July [of] 2018, Telaria became a client of [Defendant]." (Id. ¶ 37.) From that point forward, "all inventory on Telaria's platform, including [Plaintiff's] inventory, was scanned by [Defendant's] pre-bid filter." (Id. ¶ 37.) At this time, Defendant was allegedly "reporting less than two percent of [Plaintiff's] inventory as IVT." (Id. ¶ 39.) In June of 2019, Prodege became a client of Defendant's. (Id. ¶ 42.)

According to Plaintiff's FAC, "beginning in late June 2019, [Defendant] began classifying a significant portion of [Plaintiff's] traffic as [invalid] and [began] blocking [Plaintiff's] inventory from Telaria's exchange." (Id. ¶ 44.) That same month, Plaintiff "learned Telaria was rejecting [65-70%] of [Plaintiff's] advertising due to [Defendant's] pre-bid filter," meaning that [65-70%] of the advertising opportunities [Plaintiff] sought to sell were not being shown to advertisers." (Id. ¶ 45.) Around that same time, Plaintiff received an email from Telaria telling Plaintiff that Defendant "upgraded their algorithms" and since Telaria used [Defendant] for pre-bid IVT filtering," Plaintiff may see instances of increased filtering. (Id. ¶ 46.) Plaintiff's websites were also allegedly placed on Defendant's "blacklist." (Id. ¶ 47.) Plaintiff alleges that by July 2, 2019, Defendant "was blocking 99% of traffic across all of [Plaintiff's] sites." (Id. ¶ 49 (internal quotations omitted).) According to Plaintiff, Defendant's updated algorithms could not distinguish between "invalid traffic" and "incentivized" or "rewarded" traffic like what occurred on Plaintiff's websites through Prodege. (Id ¶ 77.)

As alleged in the FAC, Plaintiff "historically generated millions of dollars of revenue from Telaria's platform." (Id. ¶ 50.) That revenue "fell by over 99% from June to July 2019." (Id.) Plaintiff alleges that by "falsely accusing [Plaintiff] of high instances of automated browsing and manipulative behavior, classifying [Plaintiff's] websites as [generating IVT], and blacklisting [Plaintiff], [Defendant] not only disrupted [Plaintiff's] relationship with Talaria, but also directly impacted [Plaintiff's] ability to sell to advertisers," resulting in Plaintiff losing its main source of income. (Id. ¶ 51.) In addition, by blacklisting Plaintiff's website and labeling traffic to Plaintiff's website as invalid, Plaintiff alleges Defendant "has caused harm to [Plaintiff's] reputation as a digital media provider." (Id. ¶ 52.)

Plaintiff alleges it tried to obtain an explanation from Defendant on several occasions. For example, "[o]n July 10, 2019, R.J. Williams, the CEO of [Plaintiff] reached out . . . to [Defendant's technical support representative] by email." (Id. ¶ 54.) Justin Hypes, Director of Business Development for Defendant allegedly followed up and "made it clear that becoming a client of [Defendant] is what it would take to resolve [Plaintiff's] problem." (Id. ¶ 56.) Plaintiff allegedly "did not become a client, and as a result, . . . remained on [Defendant's] blacklist." (Id. ¶ 57.) Plaintiff further claims that despite several follow-ups, Plaintiff was told that "nothing further could be communicated because [Plaintiff] was not" a client of Defendant. (Id. ¶ 59.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-03334 PA (RAOx) | Date | August 6, 2020 |
|---|---|---|---|
| Title | Young Hollywood LLC v. White Ops, Inc. | | |

At a Consumer Electronics Show in Las Vegas in January of 2020, "Mr. Williams [allegedly] approached Michael Tiffany, the Co-Founder and President of [Defendant] to discuss the situation." (Id. ¶ 76.) According to Plaintiff, Mr. Tiffany acknowledged that [Defendant's updated algorithm] could not differentiate between incentivized traffic [- the kind of traffic Plaintiff's websites generated -] and IVT, and that this was likely the reason [Defendant] was flagging [Plaintiff's] inventory." (Id. ¶ 77.) Mr. Tiffany allegedly assured Mr Williams "that he would discuss the issue with his engineering team in order to expedite a technical solution so that [Plaintiff] would no longer be blocked." (Id.) According to Plaintiff's FAC, despite a proposed plan and Mr. Tiffany's assurance, Defendant "was still flagging [Plaintiff's] inventory on the Telaria platform for automated browsing/bots and other mechanisms." (Id. ¶ 80 (internal quotations omitted).) Plaintiff claims Mr. Williams sent several follow-up emails to Mr. Tiffany, but never received a response. (Id. ¶¶ 81-83.)

Plaintiff alleges Defendant "knowingly and intentionally made false and disparaging statements" about Plaintiff to multiple companies, including Beachfront, Index Exchange, AT&T Xandr, Verizon SSP, Rubicon Project, Playbuzz, and Freestar. (Id. ¶¶ 90 - 117.) Plaintiff alleges that "[b]eginning in approximately July 2019, [Defendant] falsely labeled [Plaintiff's] advertising space offerings as [invalid] within reports disseminated to all of its clients," including those listed. (Id. ¶ 90.)

Plaintiff further alleges it has incurred "severe damage to its reputation based on the false and defamatory statements [Defendant] communicated about [Plaintiff's websites]." (Id. ¶ 118.) On May 19, 2020, Telaria allegedly "ended its over a decade long relationship with [Plaintiff] after it was unsuccessful in helping remove [Defendant's] blocks." (Id. ¶ 119 (internal quotations omitted).) Plaintiff claims that Defendant's conduct has caused Plaintiff a "direct loss of millions of dollars in advertising revenue." (Id. ¶¶ 121.)

Plaintiff brings claims against Defendant for: (1) defamation, (2) trade libel, (3) product disparagement, (4) unfair competition, (5) intentional interference with prospective economic advantage, (6) negligent interference with prospective economic advantage, and (7) negligence. (¶¶ 124-173.) Defendant's Motion seeks to dismiss some of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.     Legal Standards

### A.     Motion to Dismiss

For purposes of a Motion to Dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), plaintiffs in federal court are generally required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." Fed. R. Civ. P. 12(b)(6), 8(e). The purpose of Rule 8(a)(2) is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S.

| Case No. | CV 20-03334 PA (RAOx) | Date | August 6, 2020 |
|---|---|---|---|
| Title | Young Hollywood LLC v. White Ops, Inc. | | |

41, 47 (1957)). The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6). See, e.g., Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 248–49 (9th Cir. 1997) ("The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim.") (internal quotation omitted).

      However, in Twombly, the Supreme Court rejected the notion that "a wholly conclusory statement of a claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." Twombly, 550 U.S. at 561 (internal quotation omitted). Instead, the Court adopted a "plausibility standard," in which the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]." Id. at 556. For a complaint to meet this standard, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (alteration in original)); Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002) ("'All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'") (quoting Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotations omitted). In construing the Twombly standard, the Supreme Court has advised that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

      The more stringent pleading requirements of Rule 9(b) apply to allegations of fraud. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Rule 9(b) requires particularity as to the circumstances of the fraud - this requires pleading facts that by any definition are 'evidentiary': time, place, persons, statements made, explanation of why or how such statements are false or misleading." In re Glenfed, Inc. Sec. Litig., 42 F.3d 1541, 1547 n. 7 (9th Cir. 1994) (en banc), superseded by statute on other grounds as stated in Ronconi v. Larkin, 253 F.3d 423, 428-29 (9th Cir. 2001).

**III.  Analysis**

      Defendant seeks to dismiss Plaintiff's: (1) defamation claim (count I); (2) claim under the Lanham Act (count III), and (3) claims for intentional or negligent interference with prospective economic advantage apart from Telaria and Prodege (counts V and VI).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-03334 PA (RAOx) | Date | August 6, 2020 |
|---|---|---|---|
| Title | Young Hollywood LLC v. White Ops, Inc. | | |

    **A.**    **Plaintiff's Defamation Claim (Count I)**

"Under California law, defamation involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes specific damage." Norsat Intern., Inc. v. B.I.P. Corp., 12-cv-00674, 2013 WL 5530771, at * (S.D. Cal. Oct. 3, 2013) (quoting Price v. Stossel, 620 F.3d 992, 998 (9th Cir. 2010)). The "defamatory statement must be specifically identified, and the plaintiff must plead the substance of the statement." Id. Defamation claims are "limited to statements that either directly or indirectly disparage plaintiff personally." Starbuzz Tobacco, Inc. v. Abdallah, 10-cv-03833, 2011 WL 13214313, at *3 (C.D. Cal. Nov. 2, 2011) (citing Polygram Records, Inc. v. Superior Court, 170 Cal. App. 3d 543, 550 (1985) ("[S]tatutes prohibiting defamation are only 'concerned with statements that cast aspersions upon the plaintiff directly or by imputation fairly implied, not statements that, though disparaging of the quality of his business or goods, do not call into question the plaintiff's honesty, integrity or competence.'").

Here, the Court finds the statements Defendant allegedly made do not call into question Plaintiff's honesty, integrity or competence as required to state a claim for defamation. This case is similar to Isuzu Motors Ltd. v. Consumers Union of U.S., Inc., in which Isuzu sued Consumers Union over Consumers Union's statements that a car sold by Isuzu was prone to rolling over. 12 F. Supp. 2d 1035 (C.D. Cal. 1998). The Court found the statements Consumers Union made only concerned the car at issue. Id. at 1045. "None of the defendants statements [were] about the [plaintiff distributor or the importer]." Id.

Similarly, here all of the alleged statements made by Defendant involve the type of traffic that frequents Plaintiff's websites. The statements do not say anything about Plaintiff, and in fact do not even say anything about whether Plaintiff knew about the alleged IVT. Thus, the statements cannot reasonably be read to suggest anything about Plaintiff's honesty, integrity or character as required to state a claim for defamation. See Polgygam, 170 Cal. App. 3d at 546-47 (distinguishing "trade libel" from defamation and finding comedian's statements implying defendant's wines were inferior did not constitute defamation as these statements said nothing about the plaintiff's personal reputation); Starbuzz, 2011 WL 13214313 at *4 ("Starbuzz alleges that Abdallah has said his products are the original version of those sold by Starbuzz, are produced in the same factory as Starbuzz's are made, are made by the same person as Starbuzz, and are at least as good as Starbuzz's. . . . None of the statements alleged in Starbuzz's complaint implicates its character or reputation. None could be interpreted as calling into question the plaintiff's honesty, integrity or competence or reasonably imply[ing] any reprehensible personal characteristics.")

The cases cited by Plaintiff are distinguishable. For example, in Ringcentral, Inc. v. Nextiva, Inc., Ringcentral alleged Nextiva posted fake reviews about RingCentral's services, stating RingCentral "doubled prices, refused to cancel lines, and billed for numbers they did not use." 19-cv-02626, 2020 WL 2065701, at *3 (N.D. Cal. Apr. 29, 2020). These statements directly targeted Ringcentral's conduct, and placed at issue Ringcentral's personal reputation. This is distinguishable from alleged statements about traffic to Plaintiff's websites, which Plaintiff may not have any control over. See also Maponics,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-03334 PA (RAOx) | Date | August 6, 2020 |
|---|---|---|---|
| Title | Young Hollywood LLC v. White Ops, Inc. | | |

LLC v. Wahl, 07-cv-05777, 2008 WL 2788282, at *2 (N.D. Cal. July 18, 2008) (finding statements that counterclaimants "stole data" sufficient to state a claim for defamation).

The Court therefore finds Plaintiff has failed to state a claim for defamation. The Court dismisses Plaintiff's defamation claim without leave to amend. See Isuzu at 1045 (granting motion to dismiss without leave to amend similar allegations finding leave to amend would be futile).

### B.   Plaintiff's Product Disparagement Claim Under the Lanham Act (Count III)

Next, Defendant argues Plaintiff fails to state a claim for product disparagement under the Lanham Act. To succeed on a Lanham Act claim, a plaintiff must prove:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by lessening the goodwill associated with its products.

Wells Fargo & Co. v. ABD Ins. & Financial Services, Inc., 758 F.3d 1069, 1071 (9th Cir. 2014). To constitute "commercial advertising or promotion" in violation of the Lanham Act, the representation must be 1) "commercial speech; 2) by a defendant who is in commercial competition with plaintiff; and 3) for the purpose of influencing consumers to buy defendant's goods or services." Bragel Int'l, Inc. v. Kohl's Department Stores, Inc., 17-cv-07414, 2018 WL 5858535, at *2 (C.D. Cal. June 5, 2018) (citing Coastal Abstract Serv., Inc. v. First AM. Title Ins. Co., 173 F.3d 725, 735 (9th Cir. 1999)).[1]

---

[1] The parties dispute whether the heightened pleading requirements of Rule 9(b) apply to Plaitniff's product disparagement claim under the Lanham Act. The Court agrees with the "weigh of authority that Rule 9(b) applies to Lanham Act claims that are grounded in fraud." Bobbleheads.com, LLC v. Wright Brothers, Inc., 259 F. Supp. 3d 1087, 1095 (S.D. Cal. 2017). Plaintiff's Lanham Act claim is grounded in fraud, and therefore Rule 9(b)'s heightened pleading requirements apply. Plaintiff claims Defendant "deceives its customers by touting the ability of its fraud detection services to differentiate between human and bot traffic." (FAC ¶ 31.) Plaintiff further alleges that "[t]he companies able to resolve their flagged-traffic issues [with Defendant] are those that become [Defendant's] clients. Those who refuse to 'pay up' . . . stay on [Defendant's] blacklist." (Id. ¶ 88.) Finally, Plaintiff alleges Defendant "was artificially inflating its subscription numbers by forcing digital media companies like [Plaintiff] to pay a hefty subscription fee or face blacklisting." (Id. ¶ 4.) Bobbleheads.com, 259 F. Supp. 3d at 1095 (finding allegations that defendant "committed false advertising and used false description" sounded in fraud).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-03334 PA (RAOx) | Date | August 6, 2020 |
|---|---|---|---|
| Title | Young Hollywood LLC v. White Ops, Inc. | | |

Here, the Court finds Plaintiff does not adequately plead that the statements Defendant allegedly made constitute "advertisements" as required to state a claim under the Lanham Act. First, Defendant is not "in commercial competition" with Plaintiff as required to state a claim under the Lanham Act. See, e.g. G.U.E. Tech, LLC v. Panasonic Avionics Corp., 15-cv-00789, 2016 WL 6138422, at *6 (C.D. Cal. Feb. 4, 2016) ("G.U.E. has failed to plead any fact suggesting that it and PAC were actually competitors in any relevant market, so PAC cannot be 'a defendant who is in commercial competition with the plaintiff.'"). Plaintiff is a "publisher and distributor of exclusive, premium celebrity and lifestyle content." (FAC ¶ 13.) Defendant on the other hand is a "cybersecurity company that provides fraud detection services." (Id. ¶ 29.)

Second, as stated in the FAC, the alleged statements were made to existing customers of Defendant, not to induce new customers to purchase Defendant's goods or services. Plaintiff's complaint states Defendant "deceived it customers by touting the ability of its fraud detection services to differentiate between human and bot traffic." (FAC ¶ 31.) Plaintiff does not plead any facts to suggest that the statements at issue were public, rather than private communications to already existing customers of Defendant. See G.U.E. at *6 (internal citations and quotations omitted) ("And finally, G.U.E. has only identified private statements made by PAC or its representatives to a handful of individual airlines. These statements do not qualify as misrepresentations that have been 'disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion.' Indeed, G.U.E. does not plead that any of the statements were public at all, rather than private communications.")

Therefore, the Court finds Plaintiff has failed to adequately plead a product disparagement claim under the Lanham Act. The Court dismisses Plaintiff's product disparagement claim under the Lanham Act without leave to amend. See id. at *6 (dismissing Lanham Act claim for failure to adequately allege commercial advertising without leave to amend where leave to amend would be futile.)

**C. Plaintiff's Claims for Intentional and Negligent Interference with Prospective Economic Advantage (Counts V and VI) Apart from Telaria and Prodege**

Defendant argues Plaintiff fails to adequately plead its claims for negligent and intentional interference with prospective economic advantage, apart from Plaintiff's claims related to Telaria and Prodege. Here, Defendant's attempt to partially dismiss Plaintiff's claims for negligent or intentional interference with prospective economic advantage pursuant to a motion to dismiss is improper. Although Rule 12(b)(6) is the proper procedural mechanism to dismiss part of a complaint, "many courts have recognized that a party may not use Rule 12(b)(6) to dismiss only part of a claim." Redwind v. Western Union, LLC, 18-cv-02094, 2019 WL 3069864, at * (D. Or. June 21, 2019); see also Snell v. G45 Secure Solutions (USA) Inc., 424 F. Supp. 3d 892, 904 (E.D. Cal. Dec. 19, 2019) ("A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief."); Doe v. Napa Valley Unified Sch. Dist., 17-cv-03754, 2018 WL 4859978, at *2 (N.D. Cal. Apr. 24, 2018) ("By its own terms, there does not appear to be a way to grant partial dismissal of a claim under Fed. R. Civ. P. 12(b)(6)."). In other words, courts may "not dismiss only some of the claim's allegations if the claim

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-03334 PA (RAOx) | Date | August 6, 2020 |
|---|---|---|---|
| Title | Young Hollywood LLC v. White Ops, Inc. | | |

otherwise survives." Redwood, 2019 WL 3069864 at *4; see also In re Netopia, Inc., 2005 WL 3445631, at *3 (denying motion to dismiss because "Rule 12(b)(6) should not be used on subparts of claims; a cause of action either fails totally or remains in the complaint").

Here, Defendant is not challenging the totality of Plaintiff's claims for negligent or intentional interference with prospective economic advantage. Defendant is simply try to dismiss some of the facts Plaintiff is using as support for these claims. In other words, Plaintiff is trying to dismiss Plaintiff's facts with respect to some third party business relationships that support Plaintiff's claims. This is not a proper basis for a motion to dismiss under Rule 12(b)(6). Therefore, the Court denies Defendant's Motion to Dismiss some of Plaintiff's allegations in support of Plaintiff's claims for negligent and intentional interference with prospective economic advantage.

### Conclusion

For the reasons stated above, Defendant's Motion to Dismiss is granted in part and denied in part. The Court grants Defendant's Motion to Dismiss Plaintiff's claims for defamation (count I) and product disparagement under the Lanham Act (count III) without leave to amend. The Court denies Defendant's Motion to Dismiss some of Plaintiff's allegations as to Plaintiff's claims for negligent and intentional interference with prospective economic advantage claims (counts V and VI). Defendant shall file its answer within fourteen (14) days of the entry of this order.

IT IS SO ORDERED.